UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:11CR00196 JCH-DDN |
| | ) | |
| KEVIN WHITE, et al., | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT WHITE, JOHNSON AND
CROSKEY'S PRETRIAL MOTIONS**

COMES NOW, the United States of America, by and through Richard G. Callahan,

United States Attorney for the Eastern District of Missouri, and Kenneth R. Tihen and Tiffany G.

Becker, Assistant United States Attorneys for said District, and states as follows:

On May 19, 2011, a Grand Jury in the Eastern District of Missouri returned an

Indictment against Kevin White, Samuel Johnson, Robbin Croskey and others, charging them

with conspiring to distribute and possess with intent to distribute cocaine, heroin and marijuana.

Additionally, defendants Kevin White and Robbin Croskey (along with co-defendant Viconto

Johnson) were charged with conspiring to launder money.

This matter is now before the Court on various pretrial motions filed by defendants

White, Johnson and Croskey.  The Government responds to the motions as follows:

**Defendant White and Croskey's Motions for Bill of Particulars** [Docs. 228 & 225]

Both Defendants White and Croskey have filed motions for bill of particulars pursuant to

Federal Rule of Criminal Procedure 7(f) alleging that the indictment fails to adequately inform

the defendants of the date, times, means and communications performed by them.

The United States objects to defendants' motions for a bill of particulars.  The indictment complies with Rule 7(c), Fed. R. Crim. P. in that it contains a plain, concise, definitive statement of the essential facts and elements constituting the offense charged and from which the defendant is sufficiently able to prepare his defense.  Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Redzic, 627 F.3d 683, 689 (8th Cir. 2010), citing United States v. Nabors, 45 F.3d 238, 240 (8th Cir. 1995); United States v. Livingstone, 576 F.3d 881, 883 (8th Cir. 2009). It is not the purpose of a bill of particulars to provide the defendant with evidentiary detail or discovery regarding the government's case.  United States v. Amaya, 2011 WL 4600705 (N.D. Iowa Oct. 3, 2011);  United States v. Hester, 917 F.2d 1083, 1084 (8th Cir. 1990).

Instead, a Bill of Particulars is ordered only when necessary to inform the defendant of the charges against him with sufficient clarity to enable him to prepare his defense, to minimize the element of surprise at trial, or to enable him to protect himself against a second prosecution for an inadequately described offense.  United States v. Stephenson, 924 F.2d 753, 762 (8th Cir.), cert. denied, 112 S.Ct. 63 (1991); United States v. Miller, 543 F.2d 1221, 1224 (8th Cir. 1976), cert. denied, 429 U.S. 1108 (1977).  A conviction will not be overturned for failure to order a bill of particulars unless the defendant suffers actual prejudice due to surprise at trial. United States v. Garrett, 797 F.2d 656, 665 (8th Cir. 1986).

Moreover, the Government has already made available to the defendant liberal discovery in this case, which includes documents or reports specifying the particular details of the crimes alleged in the Indictment.  See Stephenson, 924 F.2d at 761; United States v. Maull, 806 F.2d 1340, 1345-46 (8th Cir. 1986), cert. denied, 480 U.S. 907 (1987).  Additionally, the Government met with counsel for Defendant Croskey and provided a plain, concise, definitive review of the

2

evidence.  On September 8, 2011, attorney Gary Milone, representing Defendant Croskey, attended a meeting with the undersigned Assistant United States Attorneys, Assistant United States Attorney Zia Faruqui, three DEA case agents and two IRS agents.  The offer to attend this meeting had been extended to Defendant Croskey, however she declined.

During this meeting, the participants outlined the evidence pertaining to Defendant Croskey for defense counsel.  This review included statements regarding the evidence, the specific documentary evidence to support the charges, and answer to questions.

As to Defendant White, the discovery, the Government's 12(b)(4) Notice and statements made to counsel for Defendant White clearly establish the facts and evidence relied upon to support the charges set forth in the indictment.  The Indictment, discovery, and additional assistance provided by the Government together provide the defendant more than enough information to understand the charges against the defendant and prepare a defense.  Under such circumstances, a bill of particulars should not be required.  Maull, 806 F.2d at 1345-46.

**Defendant White and Croskey's Motion for Production and Inspection of Grand Jury Transcripts, Recordings, Minutes and Reports** [Docs. 236, 220, 223]

There is a strong presumption of regularity attached to the grand jury.  United States v. Wadlington, 233 F.3d 1067 (8th Cir. 2000);  United States v. Boykin, 679 F.2d 1240, 1246 (8th Cir. 1982); United States v. West, 549 F.2d 545, 554 (8th Cir.), cert. denied, 430 U.S. 956 (1977).  The defendant bears a heavy burden in seeking to over turn the presumption that an indictment has been returned by a legally constituted body acting on competent evidence before it.

Since the indictment is legally sufficient on its face, there is no basis for further inquiry into the manner in which the indictment was obtained.  United States v. Calandra, 414 U.S. 338,

349-52 (1974); Costello v. United States, 350 U. S.  359, 363-64 (1956).  Defendant Croskey's assertions that the indictment against her was unsupported by evidence is belied by the grand jury's issuance of a true bill on the charges against her.

Defendants' vague, unsupported allegations of grand jury irregularities do not rise to the level of particularized need set forth in United States v. John Doe, Inc. 481 U.S.102, 112 n.8 (1987) and United States v. Sells Engineering, 463 U.S. 418, 419 (1983).  Consequently, defendants' motion should be denied.

The Government objects to defendants' requests as being prohibited by Rule 6(e) of the Federal Rules of Criminal Procedure, because access to said materials would disclose matters occurring before the Grand Jury and the request in this case does not fall within one of the exceptions set forth in said rule.  There is a "long established policy that maintains the secrecy of the grand jury proceedings in the federal courts."  United States v. Proctor & Gamble Co., 356 U.S. 677, 681 (1958).  The Supreme Court has stated that "the proper function of our grand jury system depends upon the secrecy of grand jury proceedings."  Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 218 (1979).  The exceptions to this policy are extremely limited.

Rule 6(e)(3)(C)(ii) of the Federal Rules of Criminal Procedure provides that disclosure of Grand Jury materials may be had "when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the Grand Jury."  Fed. R. Crim. P. 6(e)(3)(C)(ii).  The Eighth Circuit has expressed the balance between the policy of secrecy which is to be afforded Grand Jury proceedings and the limited exceptions in which disclosure may be made by recognizing that "the party moving for disclosure must establish a "particularized need."'" United States v.

4

McDougal, 559 F.3d 837, 840-41 (8th Cir. 2009); Thomas v. United States, 597 F.2d 656, 657-8 (8th Cir. 1979) ("Such 'fishing expeditions' do not provide sufficient grounds for disclosure") (and cases cited therein); United States v. Faltico, 687 F.2d 273, 276 (8th Cir. 1982), cert. denied, 460 U.S. 1088 (1983).  See also, Smith v. United States, 423 U.S. 1303, 1304 (1975). Defendants have not shown the "particularized need" required to justify disclosure of otherwise secret Grand Jury materials.

Obviously, to the extent grand jury transcripts constitute material that is required to be disclosed pursuant to the Jencks Act, the Government will produce same on the Friday before trial as is custom and practice in this district.

### Defendant White and Croskey's Motion to Reveal Identities of Witnesses and/or Confidential Informants and/or Sources [Docs. 237, 221]

Defendants White and Croskey next move for an order directing the Government to reveal the identities of witnesses and/or confidential informants and/or sources.  The Government will disclose this information sufficiently before trial so that the defense may make use of the information.

The Government is aware of its duties under holdings in Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972).  Any materials, if they exist, which relate to testifying witnesses will be disclosed to defendants at a time early enough so that it may be used effectively at trial.

### Defendant White's Motion to Dismiss Indictment [Doc. 229]

Next, Defendant White moves to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 6, 7, and 12 as well as the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

To be legally sufficient on its face, the Indictment must contain all the essential elements of the offenses charged, it must fairly inform the defendant of the charges against which the defendant must defend, and it must allege sufficient information to allow the defendant to plead a conviction or an acquittal as a bar to a subsequent prosecution.  U.S. Const. amends. V and VI; Fed. R. Crim. P. 7(c); Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Mallen, 843 F.2d 1096, 1102 (8th Cir.), cert. denied 488 U.S. 849 (1988); United States v. Young, 618 F.2d 1281, 1286 (8th Cir.), cert. denied, 449 U.S. 844 (1980).

The Indictment in this case alleges all the essential elements of the crimes charged. Moreover, it specifies the approximate dates of the alleged offense as well as the factual basis for the charges brought therein, allowing the defendant to prepare a defense, including one of double jeopardy.  Fed. R. Crim. P. 7(c); Mallen, 843 F.2d at 1102.

Because the Indictment is legally sufficient on its face, this Court has no basis for further inquiry into the manner in which the Indictment was obtained.  United States v. Calandra, 414 U.S. 338, 345 (1974);  Costello v. United States, 350 U.S. 359, 363 (1956).

**Defendant White's Motion to Disqualify United States Magistrate Judge David D. Noce**

Defendant Kevin White further moves for an order of disqualification of United States Magistrate Judge David D. Noce in this case.  The basis for the motion is an alleged *ex parte* communication by the Government to Judge Noce in connection with the Pen Register/Trap and Trace Order on Defendant Kevin White's telephone.  On March 1, 2011, the Government presented an application in support of a pen register order for defendant White's telephone (a copy of which has been furnished to the defense).  That same date, Judge Noce issued an order for the requested pen register information.  There is absolutely no information furnished to Judge

Noce other than what was contained in the application regarding defendant White.  The

Government stated in the application, "Applicant certifies that the information likely to be

obtained through the aforesaid pen register and trap-and-trace devices, including enhanced caller

identification, is relevant to an ongoing criminal investigation by the agents/officers of the Drug

Enforcement Administration (hereinafter referred to as "investigative agency(ies)") into possible

violations of Title 21, United States Code, Section 841(a)(1), by Kevin WHITE and others

unknown."

This information in no way affects the United States Magistrate Judge's ability to sit in

judgment regarding the issues that will be raised in the pretrial motions and evidentiary hearing.

Accordingly, disqualification is not warranted.

### **Defendant White's Motion to Preserve All Notes** [Doc. 235]

Defendant White has moved that government investigators be ordered to preserve and

disclose any rough notes developed during the investigation.  Under present law, the

Government is not required to preserve such notes.  United States v. Leisure, 844 F.2d 1347,

1360-61 (8th Cir.), cert. denied, 109 S. Ct. 324 (1988); United States v. Kuykendall, 633 F.2d

118, 119-20 (8th Cir. 1980); cf. Arizona v. Youngblood, 488 U.S. 51, 58 (1988).  However, the

Eighth Circuit has indicated that the better practice is to preserve rough notes in case a future

need for them arises.  Leisure, 844 F.2d at 1360-61 n.10.  Because the defendant has formally

requested that these notes be preserved, the government has now informed the case agents

assigned to this matter to preserve any existing notes.  Notwithstanding the government's

agreement to preserve its agents' rough notes, it opposes any motion to produce those notes.  The

government is aware of its duty to produce material subject to the rule in Brady v. Maryland and

7

its progeny.  The government will also produce any rough notes which were signed or adopted

by a witness in the government's case in chief, pursuant to the Jencks Act.  United States v.

Shyres, 898 F.2d 647, 657 (8th Cir.), cert. denied, 498 U.S. 821 (1990).  The government is

under no duty to produce agents' rough notes that fall outside these two areas, however.  Fed. R.

Crim. P. 16(a)(2); Rozch v. United States, 28 F.3d 729 (8th Cir. 1994); United States v.

Williams, 962 F.2d 1218, 1224-25 (6th Cir.), cert. denied, 113 S. Ct. 264 (1992); United States

v. Pisello, 877 F.2d 762, 767-68 (9th Cir. 1989); United States v. Dekle, 768 F.2d 1257, 1263

(11th Cir. 1985); Kuykendall, 633 F.2d at 119-20; United States v. Burger, 773 F. Supp. 1419,

1425 (D. Kan. 1991).

### Defendant White's Motion for Severance of Defendants [Doc. 234]

Defendant White's motion seeks a separate trial on the charges in the indictment in this

case.

"There is a preference in the federal system for joint trials of defendants who are indicted

together."  Zafiro v. United States, 113 S.Ct. 933, 937 (1993); Richardson v. Marsh, 107 S.Ct.

1702, 1708 (1987).  The Eighth Circuit "has consistently held that persons charged with

conspiracy should generally be tried together."  United States v. Kindle, 925 F.2d 272, 277 (8th

Cir. 1991).  "Rarely, if ever will it be improper for co-conspirators to be tried together."  United

States v. Dijan, 37 F.3d 398, 402 (8th Cir. 1994); United States v. Stephenson, 924 F.2d 753, 761

(8th Cir.), cert. denied, 112 S.Ct. 63 (1991); United States v. Drew, 894 F.2d 965, 968 (8th Cir.),

cert. denied, 110 S.Ct. 1830 (1990).  "It is well settled that defendants are not entitled to

severance merely because they may have a better chance of acquittal in separate trials."  Zafiro,

113 S.Ct. at 938.  See also, Layton v. South Dakota, 918 F.2d 739, 744 (8th Cir.), cert. denied,

111 S.Ct. 1429 (1990).  Likewise, severance is not required:  if the evidence against a co-defendant is more damaging, United States v. Pou, 953 F.2d 363, 369 (8th Cir.), cert. denied, 112 S.Ct. 1982 (1992); if the defendant's role in the conspiracy is minor, United States v. Pecina, 956 F.2d 186, 188 (1992); or if all the evidence will not be admissible against all co-defendants, United States v. Sparks, 949 F.2d 1023, 1027 (8th Cir.), cert. denied, 112 S.Ct. 1987 (1991).

"The mere fact that there is hostility among the defendants or one defendant may try to save himself at the expense of another is not sufficient grounds to require separate trials." United States v. Garret, 961 F.2d 743, 746 (8th Cir. 1992).  "Mutually antagonistic defenses are not prejudicial per se." Zafiro, 113 S.Ct. at 938.

Anticipated exculpatory testimony of a co-defendant does not automatically require severance.  United States v. Foote, 920 F.2d 1395, 1400, (8th Cir.), cert. denied, 111 S.Ct. 2246 (1991).  Something more than a bald assertion that one defendant will testify as to the innocence of another is required.  Id. at 1400 n.3.  A defendant must show the following:  1) that there is a bona fide need for the testimony; (2) the substance of the desired testimony; (3) the exculpatory nature and effect of the desired testimony; and (4) that the co-defendant will indeed testify at a separate trial.  Foote, at 1400 n.4.  Defendant in the instant case has not made this threshold showing.  Furthermore, in order to warrant severance, the proffered testimony must be "substantially exculpatory."  United States v. Jagim, 978 F.2d 1032, 1040 (8th Cir. 1992).  "Severance is not mandated simply because a co-defendant might testify and thereby only 'increase the chances of acquittal or tend to rebut some aspect of the Government's case.' Exculpation is required."  Foote, 920 F.2d at 1400 (quoting United States v. Reed, 733 F.2d 492, 508 (8th Cir. 1984).

9

Finally, the Government will not offer any statements by any defendants which would violate <u>Bruton v. United States</u>, 391 U.S. 123 (1968).

For all the foregoing reasons, the defendant White's motion to sever should be denied.

### Defendant Croskey's Motion Requesting Disclosure of Favorable, Exculpatory and Impeaching Information [Doc. 222]

Defendant Croskey has filed a motion requesting the disclosure of favorable, exculpatory and impeaching information.  The government is aware of its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and will comply therewith.  The government agrees to provide the defendant, in advance of trial, a copy of the criminal records, if any, of its witnesses.  The government also agrees to provide defendant in advance of trial any promises or agreements between the government and its witnesses, if any.

The government declines to provide any such material with respect to persons who will not be called as witnesses since such a request is beyond the scope of <u>Brady</u>. With respect to witness statements, including grand jury testimony, these will be produced pursuant to the provisions of the Jencks Act.  <u>United States v. Mullins</u>, 22 F.3d 1365, 1372 (6th Cir. 1994); <u>United States v. Eisenberg</u>, 469 F. 2d 156, 160 (8th Cir.), <u>cert. denied</u>, 410 U.S. 992 (1973).

### Defendant Croskey's Motion Requesting Early Production of Jencks Act Materials [Doc. 218]

Defendant Croskey has requested that the Court issue an order directing the Government to provide an early production of materials pursuant to the Jencks Act.  As is the Government's typical practice in this district, the Government will make Jencks Act material available to the defense on the Friday before the trial in this matter.  This disclosure will be adequately early to

allow defendant Croskey to make sufficient use of the information.  No earlier production of Jencks Act material is warranted here.

### Defendant Croskey's Motion to Compel Disclosure [Doc. 205]

Defendant Croskey requests that copies of certain consensually recorded conversations between a confidential informant and other members of the conspiracy be provided to her.  The Government has provided Defendant Croskey with access to the recordings themselves as well as reports that detail those recordings.  As the recordings pertain to other defendants there is no requirement under Federal Rule of Criminal Procedure 16 that copies of the recordings or reports be given to defendant Croskey.

### Defendant White's Motion to Suppress Illegally Seized Evidence [Doc. 232]

Defendant White next moves to suppress evidence seized on March 28, 2011 at 4440 Nazareth Hills Drive, St. Louis, Missouri, Defendant White's residence.

On March 28, 2011 at 8:40 p.m., United States Magistrate Judge Mary Ann L. Medler issued a search and seizure warrant for 4440 Nazareth Hills Drive after reviewing an application and supporting affidavit which set forth ample probable cause for to believe that evidence of drug trafficking crimes would be found therein.

Pursuant to that warrant, at approximately 8:57 p.m. on March 28, 2011, investigators knocked on the front door of 4440 Nazareth Hills Drive to execute the warrant.  After not receiving a response and after having waited a reasonable amount of time, the front door of the residence was forced open because investigators feared that occupants inside the residence could be destroying evidence or arming themselves.  A systematic search of the residence followed and Defendant Kevin White was located in the kitchen and co-defendant Robbin Croskey was

11

located in the upstairs bathroom.  Additionally, investigators located large sums of U.S. currency, expensive jewelry, miscellaneous documents, computers, and an electronic money counter.

Following the execution of the warrant on March 28, 2011, investigators left a copy of the search warrant.  A return and inventory was timely filed with the Court on April 7, 2011.

Defendant White erroneously asserts that, while executed on March 28, 2011, the warrant was not issued until March 29, 2011.  This is completely false and belied by the documentation in this case.  A review of the certified copy of the Search and Seizure Warrant issued for the residence clearly demonstrated that it was issued on March 28, 2011 at 8:40 p.m., before it was executed on March 28, 2011 at 8:57 p.m.  Accordingly, this argument is wholly without merit.

In the alternative, Defendant White argues that the warrant was issued without probable cause.  A review of the affidavit in support of the application for search warrant reveals that there was a substantial basis for finding probable cause to believe evidence of the commission of drug trafficking crimes would be found within the residence.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The issue before the court when reviewing the legal sufficiency of the basis for the issuance of a search warrant is whether the issuing judge had a substantial basis for concluding that probable cause existed. United States v. White, 356 F.3d 865, 869 (8th Cir. 2004); United States v. Terry, 305 F.3d 818, 823 (8th Cir. 2002).

The determination of probable cause is made by a "totality of the circumstances" review. Illinois v. Gates, 462 U.S. 213, 238 (1983).  In the context of a search, probable cause is defined as a "fair probability that contraband or evidence of a crime will be found in a particular place." Id.  The reviewing magistrate is to consider the facts in a practical common sense manner.  The evidence must provide the magistrate with a "substantial basis" for his findings.  Id. at 238-39.

Defendant White further contends that law enforcement officers searched outbuildings at the residence in violation of the warrant.  Nothing was seized from the outbuildings and therefore, nothing is subject to suppression.  Accordingly, defendant White's motion to suppress evidence should be denied.

### **Defendant White's Motion to Suppress Statements** [Doc. 231]

Defendant Kevin White moves to suppress the statements he made to law enforcement officials from DEA on March 28, 2011.  Defendant argues that the statements were "irrelevant and immaterial to the issues in this case," and were made involuntarily under duress and coercion on the basis of threats and promises made by law enforcement officers and without the benefit of *Miranda* rights.

On March 28, 2011, DEA investigators responded to defendant White's residence at 4440 Nazareth Drive, St. Louis, Missouri for the purpose of executing a search warrant. Following the execution of the warrant, investigators arrested defendant White and he was taken to the DEA Division Office.  At that time, DEA Task Force Officers Robert Lang and Mark Biondolino informed defendant White of his *Miranda* rights using a written DEA form. Defendant White indicated he understood each of his rights by placing his initials next to each right.  Additionally, defendant White signed the bottom of the form indicating that he understood

13

his rights and was willing to speak to investigators.

Pursuant to  Miranda v. Arizona, 384 U.S. 436 (1966), defendant Johnson was properly advised that: 1) he had the right to remain silent; 2) anything he said could be used against the him in court; 3) he had the right to talk to a lawyer for advice before any questions were asked, and that the lawyer could be with him during questioning; 4) if he could not afford a lawyer, one would be appointed for him before any questioning; and 5) even if he decided to answer questions now without a lawyer present, he still had the right to stop answering questions at any time.  Defendant White knowingly and intelligently waived those rights in writing, thus making the statement admissible in trial.  McNeil v. Wisconsin, 111 S.Ct. 2204, 2208 (1991); Miranda, supra at 478; Tucker v. United States, 375 F.2d 363, 366 (8th Cir.), cert. denied, 389 U.S. 888 (1967).

The evidence will show that defendant Johnson's decision to waive his rights and make statements was completely knowing and voluntary; and therefore, the statements defendant White on March 28, 2011 made to TFOs Lang and Biondolino on April 14, 2011 are not subject to suppression.

**Defendant White's Motion to Suppress the Contents of Electronic Surveillance** [Doc. 233]

Defendant White next seeks to suppress the contents of any and all electronic surveillance or wiretapping, arguing that investigators failed to make a sufficient showing that they exhausted all other investigative techniques and that investigators failed to properly minimize privileged conversations during the course of the wiretapping of Defendant White's telephone.

14

As demonstrated below, all electronic surveillance obtained in this case was properly applied for and authorized by the Court.  Additionally, all statutory requirements were satisfied. Accordingly, the defendants' motions to suppress electronic surveillance should be denied.

**Pen Register**

As a preliminary matter, it is the Government's position that defendant Kevin White has standing to contest the pen register and/or data retrieved pursuant to Title 18, United States Code, Section 3122 but that that standing exists only for his telephone, (314) 791-1325. Defendant White does not have standing to contest the remainder of the pen register data and/or data retrieved pursuant to Title 18, United States Code, Section 2703(c) and (d) for other telephone numbers because those belonged to other co-defendants.

On March 1, 2011, the undersigned applied for and received an order from United States Magistrate Judge David D. Noce, authorizing the installation of pen register and trap and trace devices, including caller identification on cell phone number (314) 791-1325, subscribed by Kevin White, 5326 Union, St. Louis, MO 63115.  The application certified that the Government was investigating Kevin White and others for violations of Title 21, United States Code, Section 841(a)(1).

The aforementioned application certified a proper purpose for the pen register and trap and trace device and each order complied with all statutory requirements.  See 18 U.S.C. §3123(b) and therefore there is no basis to suppress the data collected as a result of the order.

**Court-Authorized Wiretaps**

The procedures for authorization of electronic surveillance are found in 18 U.S.C. §2518.

Target Telephone #3[1]

On March 16, 2011, United States District Judge E. Richard Webber, signed an order in Case No. 4:11MC00164 ERW authorizing the interception of wire communications occurring over telephone number (314) 791-1325 (target telephone #1) (utilized by defendant Kevin White) for a period of thirty days.  The application for this order was executed by Assistant United States Attorney Tiffany G. Becker and was accompanied by an affidavit in support executed under oath by Task Force Officer Robert Lang of the Drug Enforcement Administration (DEA).  Interim reports were timely filed on March 28, 2011, April 6, 2011 and April 18, 2011.  On April 18, 2011, a sealing application was filed and a formal sealing order was issued by United States District Court Judge Jean C. Hamilton.

Probable Cause

Pursuant to 18 U.S.C. §2518(3), a court may issue an order to allow for interception of electronic communications if the judge finds that: (1) there is probable cause to believe that an individual is committing, has committed, or is about to commit one of the crimes described in 18 U.S.C. §2516; (2) there is probable cause to believe that particular communications concerning the offense will be obtained though such interception; (3) normal investigative procedures have

---

[1]In the motion, defendant Kevin White only addresses the court-authorized wiretap on his telephone, Target Telephone #3, (314) 791-1325.  Defendant White was also intercepted on Target Telephones #1 and #2 (used primarily by co-defendant Keith Williams).  As defendant White offers no specific attacks on the court-authorized wiretaps of these telephones, the Government has not addressed them herein; however, as with Target Telephone #3, there is similarly no basis to suppress the electronic surveillance conducted on Target Telephones #1 and #2.

been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too

dangerous; and (4) there is probable cause to believe that the facilities or the place from which

the communications are to be intercepted are being used, or are about to be used, in connection

with the subject individual.  18 U.S.C. §2518(a)-(d); United States v. Milton, 153 F.3d 891, 895

(8th Cir. 1998).

 In order to properly challenge the validity of a court-authorized wiretap, a defendant must

show a substantial, not just technical, deviation from the statutory requirements.  United States v.

Fairchild, 189 F.3d 769, 774-75 (8th Cir. 1999).

 A review of the documentary evidence in this case reveals that the Government has

complied with all of the requirements set forth in 18 U.S.C. §2516.

 The probable cause required for a wiretap order "does not differ from that required by the

fourth amendment for a search warrant."  United States v. Macklin, 902 F.2d 1320, 1324 (8th

Cir. 1990), citing United States v. Leisure, 844 F.2d 1347, 1354 (8th Cir.), cert. denied, 488 U.S.

932 (1988).

> The task of the issuing magistrate is simply to make a practical, commonsense
> decision whether, given all the circumstances set forth in the affidavit before him,
> including the "veracity" and "basis of knowledge" of persons supplying hearsay
> information, there is a fair probability that contraband or evidence of a crime will
> be found in a particular place.  And the duty of a reviewing court is simply to
> ensure that the magistrate had a "substantial basis for conclud[ing] that probable
> cause existed.

Macklin, 902 F.2d at 1324, quoting Illinois v. Gates, 462 U.S. 213, 238-39 (1983).

 This Court's review of all of the affidavit presented that support the application for

interception of electronic communications will reveal that there is more than ample support for

the district court's finding of probable cause to issue the wiretap orders.  Information in the

17

affidavits from police officers and agents, pen registers, and reliable, confidential informants clearly demonstrate that violations of the controlled substances laws were occurring and that the Target Telephone #3 used by defendant Kevin White was being used to facilitate the commission of those crimes.  The affidavit specifically sets forth telephone calls between co-defendant Keith Williams on Target Telephone #1 and White on Target Telephone #3 and observations made during surveillance which reveal that there was probable cause to believe that the communications would reveal evidence of drug trafficking.  Therefore, any motion to suppress based on lack of probable cause contained in these affidavits should be rejected.

<u>Necessity</u>

Just as there was ample probable cause to support the issuance of orders authorizing the interception of wire communications in this case, so was there the requisite necessity required under 18 U.S.C. §2518.  "Section 2518(1)(c) provides that an application for an order authorizing a wiretap must include, among other things, 'a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.'" <u>United States v. Thompson</u>, 210 F.3d 855 (8th Cir. 2000).  The purpose of the requirement is to insure that "wiretaps are not routinely employed as the initial step in an investigation."  <u>United States v. Maxwell</u>, 25 F.3d 1389, 1394 (8th Cir. 1994), <u>quoting</u> <u>United States v. Macklin</u>, 902 F.2d 1320, 1326 (8th Cir. 1990).  However, this prerequisite "does not require that law enforcement officers exhaust all possible techniques before applying for a wiretap."  <u>United States v. Shaw</u>, 94 F.3d 438, 441 (8th Cir. 1996).  "The government is simply not required to use a wiretap only as a last resort."  <u>Macklin</u>, 902 F.2d at 1327.

18

In the affidavit supporting its application for electronic intercepts, the government set forth in detail alternative investigative techniques employed. Clearly, the wire interceptions in this case were not the initial step in the investigation.

Investigators explained their efforts on physical surveillance and the limitations of that method of investigation.  Additionally, the use of search warrants, confidential sources, informants, undercover agents, interviews with targets, grand jury, toll analysis records, tracking devices, police records, trash seizures, electronic surveillance cellular location data, and existing Title III intercepts were all discussed in detail.

While some of the other techniques employed by the officers in this case may have been initially fruitful, the entire scope of the organization had certainly not been revealed and as the investigation progressed, the shortcomings of these techniques became apparent.  See Maxwell, 25 F.3d at 1394 ("Officers had not been able to determine from other investigative methods the scope of the suspected conspiracy or to develop enough evidence to successfully prosecute the suspects whom they had identified.").  Even where conventional investigative techniques had been somewhat successful, a wiretap may still be authorized.  United States v. O'Connell, 841 F.2d 1408, 1415 (8th Cir.), cert. denied, 487 U.S. 1210 (1988) and 488 U.S. 1001 (1989).

"Drug crime is necessarily harder to detect than other crimes because it is difficult to witness and does not create victims who are compelled to come forward and report the crime." United States v. Milton, 153 F.3d 891, 895 (8th Cir. 1998).

Because the wire intercepts were necessary for the identification of the entire scope of the conspiracy and all of its members, defendants' motions to suppress based on lack of necessity for wiretap interceptions should be denied.

19

Minimization

Defendant White also attacks the wiretap order issued in this case based upon an alleged failure to properly minimize conversations.  The determination of whether agents conducted the surveillance in a reasonable manner is to be determined by an objective reasonableness standard. Scott v. United States, 436 U.S. 128, 137, 98 S. Ct. 1717, 1723 (1978).

> In considering whether the government's conduct was reasonable, a reviewing court must consider a variety of factors, including the scope of the enterprise, the agent's reasonable expectation of the content of a call, the extent of judicial supervision, length and origin of a call, and use of coded or ambiguous language. More extensive wiretapping is reasonable when the investigation focuses on determining the scope of a widespread conspiracy.  The same is true when the conversations are in the jargon of the drug trade.  Thus, the government's conduct could be reasonable even if the total number of conversations intercepted contained a high percentage of nonpertinent calls.

United States v. Macklin, 902 F.2d at 1328 (internal citations omitted).

The evidence and testimony presented at the evidentiary hearing in this cause will demonstrate that all agents that were listening to intercepted communications were instructed by Assistant United States Attorney Tiffany G. Becker regarding proper minimization techniques. In fact, each agent signed a minimization letter which explicitly set forth their minimization duties.  The ten-day reports filed with respect to each intercepted telephone number contain a break down of those calls which were minimized.

Defendant White makes general, unsupported claims that "[o]nly a nominal amount of calls were minimized" without specifying specific calls (with one exception) which were not pertinent to the crimes being investigated wherein investigators failed to properly exercise their duty to minimize.  Defendant White does point to one instance where investigators failed to minimize "phone calls between one of White's attorneys, Mike Owens."

20

The one call intercepted between defendant White and Mike Owens cited by White is Call #748 (intercepted over defendant White's telephone, Target Telephone #3).  The call lasted approximately 35 seconds from the point it was dialed until the point it was minimized.  The first 20 seconds consisted of the dialing, ringing and answering of the phone.  During the 12 seconds of conversation, Attorney Owens informed Defendant White of a meeting and instructed defendant White to bring all paperwork left by the federal agents.  At that point, the call was minimized and marked as privileged.  What, if any, knowledge gained from this call did not affect the attorney-client privilege and did not prejudice defendant.

Sealing

Defendants further argue that the government failed to present the recordings in this matter for sealing promptly.  Title 18, United States Code, Section 2518(8)(a) provides:

> ...Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions.

"The term '[i]mmediately' means that the tapes should be sealed either as soon as practical after the surveillance ends or as soon as practical after the final extension order expires."  United States v. Coney, 407 F.3d 871, 873 (7th Cir. 2005), quoting United States v. Williams, 124 F.3d 411, 429 (3d Cir. 1997).  Courts have held that "that shouldn't require more than a couple of days at most."  Coney, 407 F.3d at 873; United States v. Wilkinson, 53 F.3d 757, 759-60 (6th Cir. 1995); United States v. Wong, 40 F.3d 1347, 1375 (2d Cir. 1994).

Careful examination of the sealing application and order presented in the instant case demonstrate that the recordings made were sealed the next business day after monitoring stopped pursuant to the Court order.  This certainly complies with the requirement that the sealing occur

21

as soon as practical.

Accordingly, for all of the foregoing reasons, defendant White's motions to suppress fruits of electronic surveillance should be denied.

**Defendant Samuel Johnson's Motion to Suppress Evidence and Statements** [Doc. 193]

Finally, defendant Samuel Johnson filed a motion to suppress statements he made on April 14, 2011.  Therein, defendant Johnson complains that he was arrested without a warrant or probable cause and that any statements or writings he made were involuntary, under duress and without the benefit of *Miranda* warnings.

On March 28, 2011, investigators executed a search warrant at defendant Johnson's (and co-defendant Wider's) residence at 10234 E. Emily Place in Tucson, Arizona.  Investigators had information linking this residence and defendants Johnson and Wider to the storage of vehicles and packaging of drugs hidden inside vehicles for transportation back to the St. Louis area, which constituted sufficient probable cause to arrest them.

In light of this information, Task Force Officers Robert Lang and Mark Biondolino traveled to Tucson, Arizona for the purpose of furthering their investigation.  On April 14, 2011, defendant Samuel Johnson responded to the DEA-Tucson , Arizona Division office where he was interviewed by TFO's Lang, Biondolino and an Arizona TFO, Frank Moreno.  TFO Lang advised defendant Johnson of his *Miranda* rights using a written form.  Defendant Johnson acknowledged that he understood his rights by initialing the written form beside each right and then signing the "Advice of Rights" form indicating that he understood his rights and was willing to make statements.

Pursuant to  Miranda v. Arizona, 384 U.S. 436 (1966), defendant Johnson was properly advised that: 1) he had the right to remain silent; 2) anything he said could be used against the him in court; 3) he had the right to talk to a lawyer for advice before any questions were asked, and that the lawyer could be with him during questioning; 4) if he could not afford a lawyer, one would be appointed for him before any questioning; and 5) even if he decided to answer questions now without a lawyer present, he still had the right to stop answering questions at any time.  Defendant Johnson knowingly and intelligently waived those rights in writing, thus making the statement admissible in trial.  McNeil v. Wisconsin, 111 S.Ct. 2204, 2208 (1991); Miranda, supra at 478; Tucker v. United States, 375 F.2d 363, 366 (8th Cir.), cert. denied, 389 U.S. 888 (1967).

The evidence will show that defendant Johnson's decision to waive his rights and make statements was completely knowing and voluntary; and therefore, the statements defendant Johnson made to TFOs Lang and Biondolino on April 14, 2011 are not subject to suppression.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Government requests that all motions to suppress be denied, and all motions for orders be addressed as set forth above.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney


 s/ Kenneth R. Tihen
KENNETH R. TIHEN #6813
TIFFANY G. BECKER #46314MO
Assistant United States Attorney
111 S. 10th Street, Rm. 20.333
St. Louis, Missouri 63102
(314) 539-2200

23

**CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2011, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

_s/ Kenneth R. Tihen_____
KENNETH R. TIHEN #6813
TIFFANY G. BECKER #46314MO
Assistant United States Attorneys