UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:11 CR00196 JCH |
| | ) | |
| | ) | |
| ROBBIN CROSKEY, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S TRIAL BRIEF

Comes now the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Kenneth R. Tihen and Tiffany G. Becker,  Assistant United States Attorneys for said District, and submits the following trial brief:

## I.  FACTS

At the trial on this matter, the evidence will show defendant's participation in a conspiracy to distribute and possess with intent to distribute cocaine, heroin and marijuana, and conspiracy to commit money laundering.

The Drug Enforcement Administration received information from a confidential source and other investigative means that revealed that Quentin Thompson and Viconto Johnson and Kevin White were obtaining various vehicles and outfitting them with hidden compartments for the purpose of repeatedly transporting large quantities of cocaine and marijuana from Arizona to the Eastern District of Missouri.  Following the transportation of the cocaine and marijuana, members of the conspiracy would distribute the controlled substances in the Eastern District of Missouri and generate significant proceeds.

After learning that a Toyota Rav4 would be a suitable vehicle to outfit with a hidden compartment, Viconto Johnson and others arranged to purchase that type of vehicle during an auto auction on August 31, 2010.  Subsequently, Johnson and Kevin White arranged to have a concealed compartment installed in the Toyota Rav4.

Investigators found that Croskey was assisting members of the drug trafficking organization purchase vehicles which are subsequently used to transport narcotics and for use during the conspiracy.  These vehicles were purchased through the Exotic Motors franchise, Croskey's company, and were purchased in either nominee names or the sales paperwork is completed in such a manner as to conceal the true source of funds used to purchase the vehicles. Two of these vehicles were subsequently outfitted with hidden compartments.  One vehicle, a Toyota Rav 4 was searched in December 2010 and found to contain multiple kilograms of cocaine and marijuana. Another vehicle, a Dodge Challenger, was outfitted with a hidden compartment.

After a courier backed out of transporting narcotics, the conspirators set up Oscar Patton, and later Tameka Davis, as the couriers. On October 30, 2010, Title III intercepts between Johnson and Thompson revealed that large amounts of cocaine would be purchased in Arizona. In November  2010, Oscar Patton moved the Toyota Rav4 to Arizona.

On December 23, 2010, investigators became aware that the Toyota Rav4 had left Arizona and was on its way back to St. Louis.  Agents applied for and received authorization for a seizure warrant for the vehicle.  On December 24, 2010, the investigative team found the Toyota Rav4 parked unoccupied in the lot of the America's Best Value Inn and Suites in La Junta, Colorado.  Patton observed investigators attempting to execute that seizure warrant and

-2-

thought his car was being stolen.  Patton then entered the driver's seat and departed the area. DEA agents coordinated with law enforcement officers to conduct a traffic stop of the vehicle, which was seized.

On December 28, 2010, a federal search warrant was obtained for the Toyota Rav4 and pursuant to that warrant, agents located 7.88 kilograms of cocaine and 2.773 kilograms of marijuana secreted in a hidden compartment.

On March 17, 2011, members of the investigative team initiated Title III intercepts of Target Telephone #3, utilized by Kevin White.  Those intercepts yielded a number of conversations between conspirators.

On March 19, 2011, Title III intercepts between White and Davis revealed brief conversations about meeting together at a shopping center near White's home. On March 28, 2011, members of the investigative team conducted a traffic stop of the 2006 Mercedes-Benz R-350 as it was traveling toward St. Louis, Missouri.  Davis was driving the vehicle which was searched and found to contain 16.65 kilograms of cocaine and 1.427 kilograms of marijuana secreted within a concealed compartment and/or natural void. Davis had made multiple trips transporting drugs for the organization at the direction of Quentin Thompson, Viconto Johnson and Kevin White.

During the execution of a federal search warrant of Kevin White's and Robbin Croskey's residence in March 2011, U.S. currency totaling in excess of $360,000 was found secreted throughout the residence.  Search warrants were executed at the residence of Viconto Johnson and a stash location. Large amounts of narcotics, including heroin, were seized at Johnson's last

known residence and the Addison store house. A fingerprint of Kevin White was located on a package of the heroin seized. Numerous other items of evidence were seized.

## II.     LEGAL ISSUES: COUNT I

### A.     Elements of the Offense

Count I of the Indictment charges defendant Robbin Croskey with conspiring with other defendants and co-conspirators to distribute and possess with the intent to distribute cocaine, heroin and marijuana in violation of Title 21, United States Code, Sections 841(a)(1) and 846. The essential elements of this violation are that (1) defendant and at least one other person reached an agreement to distribute or possess with the intent to distribute cocaine, heroin and marijuana; (2) defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or some later time while the agreement was still in effect; and (3) defendant knew the purpose of the agreement at the time he joined. See United States v. Payton, 636 F.3d 1027, 1043 (8th Cir. 2011), cert. denied, 132 S.Ct. 349 (2011); United States v. Manes, 603 F.3d 451, 457 (8th Cir. 2010).

"A single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions." United States v. Donnell, 596 F.3d 913, 923 (8th Cir. 2010) cert. denied, 131 S.Ct. 309 (2010) and cert. denied, 131 S.Ct. 994 (2011). In addition, no formal or express agreement is required. Id. Rather, the agreement may be tacit and based upon the actions of the defendant and others. Id. Proof of an overt act in furtherance of the conspiracy is also not required.  United States v. Shabani, 115 S. Ct. 382, 383 (1994); United States v. White, 408 F.3d 399, 401 (8th Cir. 2005); United States v. Johnson, 2012 WL 1382519  at *2 (E.D.MO 2012).

To be a conspirator, one does not have to be aware of the existence of all other conspirators or all the details of the conspiracy.  United States v. Huggans, 650 F.3d 1210, 1222 (8th Cir. 2011) cert. denied, 132 S.Ct. 1583 (2012).  However, the Government must show some element of cooperation beyond mere knowledge of the existence of the conspiracy. United States v. Slagg, 651 F.3d 832, 840 (8th Cir. 2011) (finding record was "replete" with evidence of regular cooperation between conspirators from which jury could infer "ongoing, facilitative relationship between parties who were aware of the scope of one another's activities") (quoting United States v. Roach, 164 F.3d 403, 412 (8th Cir. 1998))).

Further, a defendant may be criminally liable for any substantive crime committed by a co-conspirator in the course and furtherance of the conspiracy.  United States v. Bowie, 618 F.3d 802, 815 (8th Cir. 2010).  Finally, the Government may rely "wholly on circumstantial" evidence to prove the existence of a conspiracy.  Donnell, 596 F.3d 913 at 923.  A conspirator need not join a conspiracy at its inception.  Each person joining a conspiracy is taken to adopt, and is bound by, the prior acts and statements made in furtherance of the common objective.  See United States v. Foxx, 544 F.3d 943, 953 (8th Cir. 2008) ("When a defendant joins a conspiracy in its later stages, the concept of foreseeability (a foreward looking concept) must be turned around 180 degrees and be applied to the conduct of co-conspirators occurring before the entry of [that] particular defendant") (alterations in original) (internal quotation marks omitted).  In fact, once proof of a conspiracy is shown, only slight additional evidence is necessary to connect a particular defendant with it.  United States v. Hayes, 391 F.3d 958, 961 (8th Cir. 2004); United States v. Mathison, 157 F.3d 541, 551 (8th Cir. 1998).

B.   Coconspirator Statements

Rule 801(d)(2)(E), Federal Rules of Evidence, excludes from the definition of hearsay--

a statement by a coconspirator of a party during the course and in
furtherance of the conspiracy.

The evidentiary predicates for admissibility of a coconspirator's statements are: "(1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." United States v. Gardner, 447 F.3d 558, 560 (8th Cir. 2006), quoting United States v. Bell, 573 F.2d 1040, 1043 (8thCir. 1978); United States v. Cowling, 648 F.3d 690, 698 (8th Cir. 2011).

In order for a coconspirator's statement to be admissible at trial, the existence of the conspiracy and the defendant's and declarant's complicity in it must be proved by a preponderance of evidence.  Bourjaily v. United States, 483 U.S. 171, 175 (1987); see also Cowling, 648 F.3d at 698. In Bourjaily, the Supreme Court held that a court may consider the hearsay statements themselves for the purpose of making the preliminary factual findings required by Rule 801(d)(2)(E). Id. at 178; see also United States v. Ragland, 555 F.3d 706, 713 (8th Cir. 2009).  In addition, the necessary preliminary findings may be supported completely by circumstantial evidence, or a defendant's own conduct and admissions. Id. at 181. See also United States v. Townsley, 843 F.2d 1070, 1084 (8th Cir. 1988).

The language "during the course and in furtherance of the conspiracy" has been afforded a broad construction under Rule 801(d)(2)(E).  Ragland, 555 F.3d at 713 (8th Cir. 2009); United States v. Cazares, 521 F.3d 991, 999 (8th Cir. 2008).  Since the statements must do more than inform but advance the objectives of the conspiracy, the nature of the statements, along with when and under what circumstances they were made, must be considered.  United States v. Mayberry, 896 F.2d 1117, 1121 (8th Cir. 1990); Ragland, 555 F.3d at 713.  Accordingly, the "in

furtherance" requirement is satisfied where the statement in question furthers in any way objectives of the conspiracy.  United States v. Manfre, 368 F.3d 832, 838 (8th Cir. 2004); United States v. Guerra, 113 F.3d 809, 814 (8th Cir. 1997).

The statements of coconspirators made during the course of this conspiracy are admissible because they do not fall within the definitions of hearsay under Rule 801(d)(2)(E) of the Federal Rules of Evidence.  Ragland, 555F.3d at 713; Cazares, 521 F.3d at 998.

C.      Testimony of Plea Agreements in Direct Examination

The Government intends to elicit testimony from witnesses that have a plea agreement and/or cooperation agreement with the Government.  During direct examination, the Government intends to discuss these agreements.

It is proper for the Government to adduce this testimony from its witnesses rather than have to wait for cross-examination to draw out details of the witness agreements.  In the Eighth Circuit, the law is clear that "a confederate's guilty plea is admissible, even on the Government's direct examination of the witness, as evidence of the witness' credibility, or of his acknowledgment of participation in the offense." United States v. Cervantes, 646 F.3d 1054, 1060 (8th Cir. 2011) (emphasis added) (quoting United States v. Kroh, 915 F.2d 326 (8th Cir. 1990). The witness's plea or evidence thereof, however, "is not to be admitted as substantive evidence of the defendant's guilt," and the jury should be so instructed.  Id; Kroh, 915 F.2d at 331.  In fact, the admission into evidence of the written plea agreements of coconspirators is appropriate provided that the jury is instructed that they are not evidence of substantive guilt, but admitted for the purpose of acknowledging participation in the offense or establishing credibility.  United States v. Misle Bus & Equipment Co., 967 F.2d 1227, 1233 (8th Cir. 1992).

United States v. McClellon, 578 F.3d 846, 859 (8th Cir. 2009).

Believing that a portion of defendant's strategy will be to attack the credibility of the Government witnesses who have entered into plea agreements, the prosecution properly may bring out relevant details concerning this matters during direct examination.  United States v. Koppers Co., Inc., 454 U.S. 1083 (1981) (evidence that Governments' principal witnesses had earlier perjured themselves during early phases of investigation was properly elicited by Government on direct examination in anticipation of defense counsel's attempt to attack witnesses' credibility); see also McClellon, 578 F.3d at 859 (Government's admission of plea agreement did not unfairly bolster witness' credibility).  Permitting the government to elicit this information first is premised on the theory that "[i]f the prosecution failed to elicit the impeaching evidence in the first instance, the jury might improperly assume the Government was intentionally hiding it." United States v. Hasenstab, 575 F.2d 1035, 1040 (2d Cir. 1978). The Government's disclosure during direct examination of its witness' plea agreement is proper to diffuse any attempt by defendants to show bias on cross-examination.  United States v. Roth, 736 F.2d 1222, 1226-27 (8th Cir.), cert. denied sub nom. Means v. United States, 469 U.S. 1058 (1984); McClellon, 578 F.3d at 859:

> [W]hile the existence of a plea agreement may support the witness' credibility by showing his or her interest in testifying truthfully, the plea agreement may also impeach the witness' credibility by showing his or her interest in testifying as the government wishes regardless of the truth. Introduction of the entire plea agreement permits the jury to consider fully the possible conflicting motivations underlying the witness' testimony and, thus, enables the jury to more accurately assess the witness' credibility.

(Quoting United States v. Drews, 877 F.2d 10, 12 (8th Cir. 1989) (alterations in original). A limiting instruction telling the jury that it may not infer defendant's guilt from this evidence will

-8-

be submitted by the Government.  United States v. Campbell, 848 F.2d 846, 853 (8th Cir. 1988).

     E.  Narcotics Expert Witness Testimony

     At trial, the Government plans to introduce expert opinion testimony regarding the importation, distribution, and "street value" of cocaine, heroin and marijuana and the modus operandi of individuals who traffic in drugs including typical structures and roles within cocaine, heroin and marijuana trafficking organizations.  Prior to eliciting the opinion testimony, the Government will qualify its witness as an expert on the basis of his participation in numerous narcotics investigations.  Additionally, some of the law enforcement officers will offer opinion testimony regarding the terminology and method of operations used by drug traffickers.  Under the prevailing case law, the Government's anticipated opinion testimony is clearly admissible. The Government filed its notice of expert testimony on June 21, 2012.

     Under Federal Rule of Evidence 702, a qualified witness may testify as an expert, "(i)f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  The expert's testimony is still admissible even if it "embraces an ultimate issue to be decided by the trier of fact."  Fed. R. Evid. 704.  However, no expert testimony may be admitted as to whether the defendant had the requisite mental state constituting an element of the crime.  Id.  Admission of expert testimony or lay opinion testimony is a matter within the broad discretion of the trial judge that will not be disturbed absent an abuse of that discretion.  United States v. Anderson, 446 F.3d 870, 874 (8th Cir. 2006); United States v. Roach, 644 F.3d 763, 763 (8th Cir. 2011) (advocating standard of "substantial deference").

     "The business of drug trafficking and the modus operandi of drug dealers are matters

unfamiliar to jurors." United States v. Robertson, 387 F.3d 702, 704-05 (8th Cir. 2004); United States v. Gill, 513 F.3d 836, 847 (8th Cir. 2008).  The Eighth Circuit Court of Appeals has repeatedly recognized that Rule 702 permits a district court to allow the testimony of a witness whose knowledge, skill, training, experience or education will assist a trier of fact in understanding the business of drug trafficking.  Robertson, 387 F.3d at 704 (citing United States v. Solorio-Tafolla, 324 F.3d 964, 965 (8th Cir. 2003)) (expert allowed to testify about "(1) the price of drugs in drug trafficking; (2) drug quantities obtained for personal use; (3) drug conspiracies and roles of drug traffickers; (4) how to manufacture methamphetamine; (5) drug investigation and wiretap operations; and (6) the lack of fingerprint evidence on packaging); Gill, 513 F.3d at 847 (agent's testimony assisted the jury in understanding "the business of drug trafficking"). The federal courts as a whole have also routinely permitted law enforcement agents to give expert testimony in a variety of areas concerning drug trafficking.  United States v. Ham, 628 F.3d 801, 804 (6th Cir. 2011); United States v. Jeanetta, 533 F.3d 651, 657 (8th Cir. 2008). See Jeanetta, 533 F.3d at 657 (8th Cir. 2008) (surveillance techniques and use of "innocuous household items" in drug trafficking schemes); United States v. Jiminez, 487 F.3d 1140, 1145 (8th Cir. 2007) (pattern of one-way airline tickets not purchased in advance); United States v. Urbina, 431 F.3d 305, 311 (8th Cir. 2005) (practice and knowledge of drug couriers during transport); Gill, 513 F.3d 836 at 847 (link between firearms and drug trafficking); United States v. Spotted Elk, 548 F.3d 641, 663 (8th Cir. 2008) (typical use of items involved in manufacture like saran wrap, tin foil and grease); United States v. Beltran-Arce, 415 F.3d 949, 951 (2005) (typical drug record-keeping procedures);  Solorio-Tafolla, 324 F.3d at 966 (methods of distribution and manufacture).

-10-

In this Circuit, it is well settled that  narcotics agents may testify as to the nature, quantity and street value of drugs, as they relate to the defendant's intent to distribute.  United States v. Kelly, 679 F.2d 135 (8th Cir. 1982).  In addition, agents have been permitted to testify as to the quantity of narcotics being indicative of distribution, United States v. Robertson, 387 F.3d 702, 704 (8th Cir. 2004), the typical usage amounts of the narcotic, Solorio-Tafolla, 324 F.3d at 965, the nexus between drug trafficking and firearms, Gill, 513 F.3d at 847, and the meaning of jargon and code words, Beltran-Arce, 415 F.3d at 951; United States v. Delpit, 94 F.3d 1134, 1145 (8th Cir. 1996) ("There is no more reason to expect unassisted jurors to understand drug dealers' cryptic slang than antitrust theory or asbestosis.").

Under the case law of this Circuit, the agent clearly is permitted to testify regarding the matters set forth in its Notice of Expert Testimony filed June 21, 2012.

F.    Audio Recordings and Transcripts

The Government will also be introducing at trial recordings of telephone conversations intercepted pursuant to court-ordered wiretaps and to meetings between a cooperating witness and co-conspirators in this case.

1.    Excerpt Calls/Recordings

As to the wiretap tapes and consented recording to be offered, their audibility is quite good, but they are voluminous in the number of criminal conversations they contain. Consequently, excerpts of individual calls and meetings containing representative examples of the defendants' and co-conspirators' criminal conversations will be offered; such excerpts and summary testimony about the same are appropriate.  Fed. R. Evid. 1006; United States v. Segines, 17 F.3d 847 (6th Cir. 1994); United States v. Denton, 556 F.2d 811, 815-16 (6th Cir.

-11-

1977) and cases cited therein.  See 5, Weinstein's Evidence, p. 1006(06).

      2.      Authenticity of Wiretap Recordings

      The Government will have the supervisory DEA agents of the wiretaps in this case testify as to the authenticity of all of the wiretap recordings made.  This is a proper procedure. United States v. McMillan, 508 F.2d 101, 104 (8th Cir. 1974), cert. denied, 421 U.S. 916 (1975) and its progeny set forth a prima facie test to establish the authenticity of electronic surveillance.  The elements of this test are not rigid, but applied with flexibility and common sense.  United States v. Webster, 84 F.3d 1056, 1064 (8th Cir. 1996); United States v. Roach, 28 F.3d 729, 733 (8th Cir. 1994).  In United States v. Scully, 546 F.2d 255 (9th Cir. 1976), cert. denied, 430 U.S. 970 (1977); the Court first dealt with the question of whether the Government could make its prima facie authenticity showing without producing all of the monitoring agents. The court held that this was permissible when agents with knowledge of the procedures followed in the surveillance testified. 546 F.2d at 269.

      In United States v. Cortellesso, 663 F.2d 361 (1st Cir. 1981); Scully was taken to its logical conclusion.  Cortellesso found that the supervisory agent of court-authorized wiretaps could make the prima facie showing by testifying as to the elements of the McMillan test.  663 F.2d at 364.  This procedure has long since been followed in cases in this District and elsewhere. United States v. Rengifo, 789 F.2d 975, 978 (1st Cir. 1986); United States v. Millan, 817 F. Supp. 1072 (S.D.N.Y. 1993).  Therefore, in this case, it is proper for the supervisory DEA agent to authenticate all of the wiretap evidence.

      3.      Use of Transcripts

      The Government plans to introduce transcripts of all of the conversations played.  In the

Eighth Circuit, the decision to allow the use of transcripts to assist jurors in listening to a tape recording lies within the sound discretion of the district judge.  United States v. Chavez-Alvarez, 594 F.3d 1062, 1069 (8th Cir. 2010); see also United States v. Placensia, 352 F.3d 1157, 1165 (8th Cir. 2003) (noting trial court's discretion to admit transcripts of foreign language transcripts even without tape recordings). Transcripts in the jury room will generally not be considered cumulative when they assist the jury in evaluating the evidence. Id. at 1069.

The use of transcripts aids the jury in a number of ways.  Among these are: (1) to help the jurors follow often poor-quality recordings -- United States v. Riascos, 944 F.2d 442, 443 (8th Cir. 1991); (2) to identify speakers -- United States v. Henneberry, 719 F.2d 941, 949 (8th Cir. 1983), cert. denied sub nom. Youngerman v. United States, 465 U.S. 1107 (1984); (3) to assist the jury when portions of the recording are inaudible -- United States v. Willis, 774 F.2d 258, 259 (8th Cir. 1985); and (4) to aid the jury in understanding colloquialisms in the conversation -- United States v. Delpit, 94 F.3d 1134, 1148 (8th Cir. 1996).

The trial court should allow the use of transcripts only after each party has had an opportunity to verify the accuracy of the recordings and provide their own transcript.  United States v. Britton, 68 F.3d 262, 264 (8th Cir. 1995).  Foundationally, the person who prepared the transcripts should testify that he has listened to the recordings and accurately transcribed their contents.  United States v. Bentley, 706 F.2d 1498, 1507 (8th Cir. 1983); United States v. Frazier, 280 F.3d 835, 849 (8th Cir. 2002).  However, the Eighth Circuit does not mandate that the foundation for the transcripts be laid by one who prepared the transcripts, but it may be established by one who was a party to the conversations.  United States v. Gordon, 688 F.2d 42, 44 (8th Cir. 1982; Frazier, 280 F.3d at 849-50.

-13-

The Court, of course, must instruct the jury that differences in meaning may be caused by such factors as the inflection in a speaker's voice or inaccuracies in the transcript and that "any discrepancies [from the transcript] should be resolved in favor of what they heard on the tapes." United States v. Scott, 243 F.3d 1103, 1107 (8th Cir. 2001).  However, once admitted into evidence and given the proper cautionary instruction, the transcripts may be used by the jury in their deliberations.  United States v. Foster, 815 F.2d 1200, 1203 (8th Cir. 1987); Chavez-Alvarez, 594 F.3d at 1069.

  4. <u>Joint Presentation of Audio & Transcripts</u>

The Government intends to play the audio of telephone calls while a rolling transcript of the call appears on the court monitors.  There will be a highlighted portion of text rolling and synched to the audio file.  This is an aid to assist the jury in identifying the speakers and following the conversation.

  5. <u>Interpretation of Wiretap Calls</u>

 After the above recordings are played, the government intends to ask the respective agents to summarize and/or interpret the conversations, many of which contain coded language.

Federal Rule of Evidence 702 provides that

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable

principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

At trial, the government will move to qualify Special Agent James Stroop and Task force Officer Bob Lang as experts.  Agent Stroop and TFO Lang are officers with the Drug Enforcement Agency (DEA).  They have been a DEA officers for multiple years. They have been extensively involved in the investigation of the instant case. They have been investigating the activities involved in the instant drug and money laundering conspiracy since 2010.  As such, they have  intimate knowledge of the conspiracy's structure and organization.  They have also conducted and/or attended interviews with cooperating co-conspirators - both charged and uncharged - who have provided invaluable first-hand information regarding the defendants and their business undertaking.

Clearly, they have, by virtue of their "skill, experience, [and] training" acquired "specialized knowledge" as to the business transactions of the defendants that will "help the trier of fact to understand the evidence."   This information is " based on sufficient facts or data," and "is the product of reliable principles and methods" such as other law enforcement sources, informant de-briefings, recorded conversations, and interviews with co-defendants.   Moreover, they  "have reliably applied the principles and methods to the facts of the case."  Under these circumstances, Fed. R. Evid. 702 provides that such a witness should be permitted to "testify in the form of an opinion or otherwise."

 The fact that they will also testify as a fact witness should not impede their ability to also testify as an expert.  Courts of Appeals in several Circuits have examined the practice of calling a case agent as an expert witness.  For example, the Fifth Circuit held in <u>United States v. Green</u>,

-15-

324 F. 3d 375, 381 (5ᵗʰ Cir. 2003) that "Rule 702 does not prohibit a law enforcement officer, who has investigated the matter at issue, from testifying as an expert."  *See also*, <u>United States v. Tocco</u>, 200 F. 3d 401, 418 (2ⁿᵈ Cir. 2000) (refusing to adopt a *per se* prohibition against an officer testifying in dual roles as both a fact witness and an expert witness, so long as the "district court and the prosecutor take care to assure that the jury is informed of the dual roles of a law enforcement officer as a fact witness and an expert witness").  Similarly, in <u>United States v. Farmer</u>, 543 F. 3d 363, 371 (7ᵗʰ Cir. 2008), the Seventh Circuit held that "[T]estimony in the dual roles of both a fact witness and an expert witness can be confusing to a jury, but it is permissible provided that the district court take precautions to minimize potential prejudice."  In subsequent cases, the Seventh Circuit has elaborated, noting that under such circumstances,

> [T]he jury needs to know when an agent is testifying as an expert and when he is testifying as a fact witness.  'The potential for prejudice in this circumstance can be addressed by appropriate cautionary instructions and by examination of the witness that is structured in such a way as to make clear when witness is testifying to facts and when he is offering his opinion as an expert.'  We have recognized other precautions as well, such as the government's establishing the proper foundation for the witness's expert opinions, and the district court allowing the defense to rigorously cross-examine the expert about his interpretation [ ].

<u>United States v. York</u>, 572 F. 3d 415, 425 (7ᵗʰ Cir. 2009) (internal citations omitted).  As recently as March 2012, the Seventh Circuit has reaffirmed holdings of <u>Farmer</u> and <u>York</u>, once again holding that, assuming the appropriate safeguards are utilized, a law enforcement officer *may* testify as both a fact witness and as an expert witness.  <u>United States v. Christian</u>, 673 F. 3d 702 (7ᵗʰ Cir. 2012).[1]

---

[1]In <u>Tocco</u>, the Second Circuit noted that the

In the instant case, many of the conversations the jury will hear contain codewords and/or other jargon or slang commonly used by drug trafficking organizations.  The jury is likely to have difficulty understanding the conversations and their content without the assistance of a person qualified to interpret them.  This type of testimony is undoubtedly helpful to the trier of fact, inasmuch as the average juror could not reasonably be expected to be familiar with the techniques utilized by criminal conspirators.  "It is well established that experts may help the jury with the meaning of jargon and codewords."  United States v. Delpit, 94 F. 3d 1134, 1145 (8th Cir.  1996).  The Eighth Circuit has remarked that "[T]here is no more reason to expect unassisted jurors to understand drug dealers' cryptic slang than antitrust theory or asbestosis." Id.  See also, Farmer, 543 F. 3d at 370 ("narcotics code words are an appropriate subject for expert testimony, and [ ] law enforcement officers who have training and experience in drug-related transactions and crimes are qualified to testify as an expert concerning the practices of people engaged in that type of conduct"); Tocco, 200 F. 3d at 419 ("evidence regarding the inner-workings of organized crime has held to be a proper subject of expert opinion because such matters are 'generally beyond the understanding of the average layman'").  For these reasons, and pursuant to Fed. R. Evid. 702, the government should be permitted to have its agent/expert witness interpret the intercepted conversations.

---

dual roles were emphasized to the jury by the fact that [the witness] testified at two different times - once early in the trial as a fact witness, and again at the conclusion of trial as an expert witness.  Furthermore, the district court instructed the jury, both before [the witness] gave his opinion and again in jury charge, that it should consider [the witness's] dual roles in determining what weight, if any, to give to [the witness's] expert testimony.

G.     Business and Public Records

The Federal Rules of Evidence allows for business records to be admitted in evidence at trial without a custodian of records testifying about their authenticity. Fed. R. of Evid. 902(11) reads as follows:

Rule 902. Self-authentication

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

* * *

(11) Certified domestic records of regularly conducted activity. — The original or a duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record —

(A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

(B) was kept in the course of the regularly conducted activity; and

(C) was made by the regularly conducted activity as a regular practice.

A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

Pursuant to Rule 902(11), the Government has provided notice to defense counsel (as well as the affidavits certifying the records and the records themselves) of its intent to offer records under the rule.  The Government will offer certain business records which have been provided to the defense.  Pursuant to Rule 902(11), the Declaration of the Custodian of Records for each of these entities either has been or will be executed and the related records are/will be included.

-18-

Similarly, the Federal Rules of Evidence allow for domestic public documents that are not sealed, but are signed and certified to be admitted in evidence at trial without a custodian of records testifying about their authenticity.  Federal Rule of Evidence 902(2) reads as follows:

Rule 902. Self-authentication

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

\* \* \*

(2) Domestic Public Documents That Are Not Sealed but Are Signed and Certified.  A document that bears no seal if:
(A) it bears the signature of an officer or employee of an entity named in Rule 902(1)(A); and
(B) another public officer who has a seal and official duties within that same entity certifies under seal–or its equivalent–that the signer has the official capacity and that the signature is genuine.

Additionally, the rules allow for the admission into evidence of certified copies of public records absent the testimony of a custodian of records where:

A copy of an official record–or copy of a document that was recorded or filed in a public office as authorized by law–if the copy is certified as correct by:
(A) the custodian or another person authorized to make the certification; or
(B) a certificate that complies with Rule 902(1), (2) or (3), a federal statute, or a rule prescribed by the Supreme Court.

Fed.R.Evid. 902(4).  Pursuant to Rule 902(2) and 902(4), the Government hereby gives written notice of its intention to introduce evidence consisting of public documents and records from: the State of Illinois Secretary of State, the Missouri Department of Revenue and the State of California, Department of Motor Vehicles.

Pursuant to Rules 902(2) and 902(4), the Certifications for these entities have been executed.  Additionally, these certifications and their accompanying records have been furnished to defense counsel for defendant Robbin Croskey.

-19-

       H.    <u>Guns as Evidence of Drug Crime</u>

       Due to the inclusion of evidence of weapons seizures pertaining to the indictment, necessarily this prosecution will entail presentation of evidence concerning the possession and use of firearms.  This evidence, however, is admissible and probative with respect to the drug offense counts:

> Experience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade . . . .  Additionally, the weapon was probative of the fact that appellant "took the natural precautions that might be expected when goods are sold for a large amount of cash."

<u>United States v. Milham</u>, 590 F.2d 717, 721 (8th Cir. 1979) (citations omitted); <u>United States v. Dierling</u>, 131 F.3d 722, 732 (8th Cir. 1997); <u>United States v. Emmanuel</u>, 112 F.3d 977, 980 (8th Cir. 1997).

## III.    LEGAL ISSUES: COUNT II

       Count II of the Indictment charges defendant Robbin Croskey with conspiracy to commit money laundering in violation of Title 21, United States Code, Sections 1956(a)(1)(A)(i); 1956(a)(1)(B)(i); and 1956(h). Conspiring to launder money in violation of 18 U.S.C. § 1956(h) requires that a defendant "agreed with another person to violate the substantive provisions of the money laundering statute." <u>United States v. Slagg</u>, 651 F.3d 832, 844 (8th Cir. 2011) (quoting <u>United States v. Hanes</u>, 467 F.3d 951, 964 (6th Cir. 2006)). The essential elements of the substantive statute and the conspiracy to violate the statute provide that defendant must: (1) the defendant conducted a series of financial transactions which were in or affected interstate or foreign commerce; (2) the defendant conducted these financial transactions with money that involved the proceeds of the unlawful distribution of cocaine, heroin and marijuana; (3) at the time the defendant conducted the financial transactions, the defendant knew the money

represented the proceeds of some form of unlawful activity; and (4) the defendant conducted the financial transactions:  (a) with the intent to promote the carrying on of the conspiracy to distribute cocaine, heroin and marijuana (violation of Title 21, United States Code, Sections 846 and 841(a)(1) as described in Count I); and (b) knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds of the conspiracy to distribute and possess with intent to distribute cocaine, heroin and marijuana. United States v. Diaz-Pellegaud, 666 F.3d 492, 498 (8th Cir. 2012) (citing 18 U.S.C. § 1956(a)(1)(A)(i); United States v. Delgado, 653 F.3d 729, 737 (8h Cir. 2011) cert. denied, 132 S.Ct. 1066 (2012) (citing 18 U.S.C. 1956(a)(1)(B)); Slagg, 651 F.3d at 844).

To prove the existence of a conspiracy, the Government need not establish an overt act in furtherance of the conspiracy. Whitfield v. United States, 125 S.Ct. 687 (2005); see also United States v. Huber, 404 F.3d 1047 (8th Cir. 2008). The Government must prove an agreement between the defendant and at least one other person to launder money. United States v. Pizano, 421 F.3d 707, 726 (8th Cir. 2005). "The agreement need not be formal, and 'the government may prove the agreement wholly by circumstantial evidence or by inference from the actions of the parties.'" Delgado, 653 F.3d at 737 (quoting Pizano, 421 F.3d at 726) ("the government produced ample evidence–including recorded phone conversations, financial documents, and testimony from [co-conspirators]–from which a reasonable jury could infer that [defendat] had an agreement with [co-conspirators]") (Id. at 738) . Therefore, "the defendant's knowledge of the existence f remote links in the chain may be inferred solely from the nature of the enterprise." United States v. Donnell, 596 F.3d 913, 924 (8th Cir. 2010) cert denied, 131 S.Ct. 309 (2010) and cert denied, 131 S.Ct. 994 (2011).

**IV.     CONCLUSION**

The foregoing are the issues that the Government expects to arise in the trial of this matter.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney


/s/ Kenneth R. Tihen
KENNETH R. TIHEN #37325 MO
Assistant United States Attorney
111 South Tenth Street, 20th Floor
St. Louis, Missouri 63102
(314) 539-2200

CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2012, the foregoing as well as the referenced exhibits were filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.

s/Kenneth R. Tihen
KENNETH R. TIHEN #37325 MO
Assistant United States Attorney

-22-